UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X
CONOPCO, INC.,                        :
                                      :
                  Plaintiff,          :
                                      :
        -against-                     : 05 Civ. 09899 (RJH)(THK)
                                      :
                                      :
DINA WEIN, et al.,                    : **MEMORANDUM AND OPINION**
                                      :
                                      :
                  Defendants.         :
-------------------------------------X

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Plaintiff Conopco Inc. d/b/a Unilever ("Conopco") filed this action in November 2005, alleging that Defendant Dina Wein, various corporate entities she organized, and employees of those entities, including her counsel, Defendant Avraham Moskowitz ("Moskowitz") (collectively, "Defendants"), perpetrated an extensive fraudulent scheme against Plaintiff and numerous other consumer product companies. Specifically, alleging fraud and federal RICO claims, Plaintiff contends that Defendants, through a variety of misrepresentations and sophisticated ruses, obtained Plaintiff's and other companies' products at substantially discounted prices, purportedly to utilize in promotional and sampling programs intended to expand the companies' markets. Plaintiff alleges that, instead, Defendants diverted the products back into the wholesale market, causing economic harm to Plaintiff and the other victim companies, while unjustly enriching Defendants.

The action was referred to this Court for general pretrial supervision and, accordingly, the Court has addressed numerous

discovery disputes among the parties.  Presently before the Court are discovery disputes regarding 1) the document production of Gerry Acevedo ("Acevedo"), pursuant to Plaintiff's non-party subpoena, and 2) documents withheld from production by Defendant Moskowitz based on the attorney-client privilege. (See Letter from Rodney A. Brown, Esq. to the Court, dated May 22, 2007 ("Pl. 5/22 Letter"), at 1.)  These issues have been the subject of numerous submissions to this Court, and were both argued extensively at an April 18, 2007 hearing ("the April 18 hearing") before this Court.

I.   Document Production of Non-Party Acevedo

While Conocpo describes Acevedo as the former Chief Financial Officer of Defendant Wein's companies, and Defendants characterize his role as Defendant Wein's accountant, it is clear that Acevedo was significantly involved in financial matters related to Defendant Wein's businesses, and that he also handled her personal accounting matters.  At the April 18 hearing, the Court allowed Defendants — specifically counsel for Defendant Dina Wein — to review Acevedo's documents for privilege and relevance (as to personal matters), and ordered that a rolling production begin within two weeks, to be completed by May 18, 2007, at which time Defendants would also be required to provide a privilege log to Conopco of any documents for which a privilege was asserted. (See Transcript of Hearing, Apr. 18, 2007 ("Hearing Tr."), at 33-34.) Defendants have complied with the Court's instructions, having

2

produced, according to Conopco, nearly 1,300 pages of documents, as well as a privilege log identifying an additional twenty pages.[1] Although Conopco does not challenge Defendants' assertion of privilege with regard to the documents identified in the privilege log, Conopco does challenge the size of the total production, as well as the redactions made in a substantial number of the documents produced. (See Pl. 5/22 Letter, at 2-3.) Conopco therefore makes several requests, asking that the Court order Defendants to produce the disk on which the documents were saved, (see id. at 2; Letter from Rodney A. Brown, Esq. to the Court, dated May 29, 2007 ("Pl. 5/29 Letter"), at 2), but primarily seeking to obtain unredacted copies of all of the documents, or, at a minimum, to have the documents submitted to the Court for an in camera review. (See Pl. 5/22 Letter, at 2, 5.)

In support of its request, Conopco cites a series of alleged inadequacies in the production. First, Conopco contends that, based on representations by Acevedo's counsel at the April 18 hearing, that there were thousands of pages of documents to review, the fact that only 1,300 pages of documents have now been produced is suspicious. (See id. at 2.) Conopco then challenges the redactions to documents marked ACV 000078 - ACV 000164 — various

---

[1] The attorney-client privilege is asserted with respect to all twenty of the pages, each of which involves communications between Acevedo and various attorneys, including Moskowitz. (See Acevedo Privilege Log, Exhibit ("Ex.") B to Pl. 5/22 Letter.)

pieces of correspondence, all on the letterhead of one of Defendants' corporations, "Look MGT, Inc." — arguing that these documents, which were redacted in their substantial entirety, are not solely related to Defendant Wein's personal matters. (See id. at 2-4.) Conopco also challenges the redactions in the approximately 1,100 pages of timesheets provided as part of the production, arguing 1) that the location of specific redactions in relation to others makes it unlikely that they are actually personal in nature, (see id. at 3), 2) that on some of the timesheets there are unusual gaps between entries, suggesting that whole sections were deleted or "whited out," (see Pl. 5/29 Letter, at 1), and 3) that the printer statements at the bottom of the timesheet printouts show that whole pages of timesheet entries were not produced. (See id. at 2.)

Defendants contend that they have fully complied with the directives issued by the Court at the April 18 hearing. As stated by counsel, "redactions were made only to those documents, or portions thereof, which either: (a) were privileged; or (b) concerned Ms. Wein's personal financial matters." (Letter from Jacqueline I. Meyer, Esq. to the Court, dated May 29, 2007 ("Def. 5/29 Letter"), at 1.)

After considering the parties' correspondence to the Court, including a lengthy back and forth between the parties as to the acceptability of a certain literary reference from *Oliver Twist*,

4

the phrase from literature most apt with regard to the present dispute is "much ado about nothing."  At the April 18 hearing, Acevedo's counsel represented that, based on his preliminary review, there were thousands of pages of documents that required review.  Defendants have now produced nearly 1,300 pages of documents.  While Conopco views the disparity between the representation that thousands of documents needed to be reviewed, and the subsequent production of only 1,300 documents, as evidence that Defendants have withheld documents, Conopco's surmise provides scant reason to question the bona fides of Defendants' counsel. The Court recognizes Plaintiff's legitimate consternation with the delay in production of the Acevedo documents and the hyperbole with which Dina Wein's and Acevedo's counsel described the task of reviewing the documents.  However, this is not a basis to question the substance of the production.

With regard to the substantial redactions to the correspondence written on "Look MGT, Inc." letterhead, Defendants have represented to the Court that "the contents of these letters related to Ms. Wein's personal matters."  Although it characterizes Defendants' representation as "highly suspect," (Pl. 5/22 Letter, at 2), Conopco provides no support for this conclusory statement. Likewise, with regard to the selective redactions throughout the timesheets, intended to protect personal information, Conopco finds them "just not credible," (Pl. 5/22 Letter, at 3), but provides

little support beyond invective.  Having reviewed the timesheets cited by Conopco, and specifically the location of the redactions in relation to the surrounding entries, the Court is hard-pressed to conclude that something foul is afoot.

Similarly, Conopco's dissatisfaction with the fact that the printouts for each week state that the pages provided are, for example, "Page 17 of 26" through "Page 21 of 26," is equally unavailing.  While it may seem suspicious on its face, a brief glance at the records themselves shows that the entries for a given week begin on Monday morning, include entries through Friday evening, and conclude with a summation of total hours worked and fees accrued during the week.  (See, e.g., Timesheets for Week Ending April 7, 2001, Ex. C to Pl. 5/29 Letter.)  Most likely, the printout includes Acevedo's work for all clients in the given week, and the pages produced are only those relating to work completed for Defendants.  Indeed, Defendants state that, with the exception of those documents identified as privileged on the privilege log, "none of the timesheets which were produced by Mr. Acevedo were withheld," and "[a]ny discrepancy in the numbering is due only to the formatting of the documents." (Letter from Jacqueline I. Meyer, Esq. to the Court, dated June 26, 2007 ("Def. 6/26 Letter"), at 1-2.)  It is clear that timesheets are not missing for entire days, or for entire periods relevant to this litigation.

Defendants have made clear that all redactions were either for

privilege or to protect solely personal information.  In response
to Conopco's concern that transfers of funds between personal and
business accounts are not personal in nature, Defendants have
further represented that they have made redactions on the timesheet
"only as to transfers between accounts that were entirely personal
in nature, i.e., from one of Ms. Wein's personal accounts to
another such account." (Def. 5/22 Letter, at 2.)  Indeed, Conopco's
reference, in its May 29 letter to the Court, to a series of
timesheet entries showing transfers from Defendant Wein's personal
account to various business accounts, confirms the veracity of
Defendants' representation.

        The one issue raised by Conopco for which the Court found some
initial cause for concern relates to the swathes of blank space on
some of the timesheets, where redactions are not displayed, while
similar gaps or blank spaces do not appear on many of the other
timesheets.  Unlike other entries that were visibly redacted, upon
first glance it is unclear whether there were actual redactions in
these spaces.  However, Defendants recently submitted a letter to
the Court addressing this issue, stating plainly that the gaps are
"part of the formatting of the documents," which, "when printed,
simply had gaps." (Def. 6/26 Letter, at 1.)  Defendants further
reiterate that for any document or entry for which it may have been
unclear whether a redaction occurred, they inserted the word
"Redacted" on the document to alleviate any confusion. (Id.)  The

Court is satisfied with Defendants' explanation, and no further inquiry with regard to this matter is warranted.

In sum, Conopco has not convinced the Court that any action is necessary with respect to Defendants' production of Acevedo's documents. The Court will not require Defendants to turn over the disk containing the documents to Conopco, or to produce entirely unredacted documents. Moreover, where, as here, the production is voluminous and the evidence of noncompliance scant, the Court will not undertake the burdensome task of conducting an in camera review of the documents. See, e.g., Bowne, Inc. v. AmBase Corp., 150 F.R.D. 465, 475 (S.D.N.Y. 1993) (indicating that while an in camera review "may be useful if there is a genuine dispute between the parties, [it] is not . . . to be routinely undertaken," especially in cases involving a substantial volume of documents, or as a substitute for a party's submission of an adequate record in support of its claims).

II. Allegedly Privileged Documents of Defendant Moskowitz

Conopco disputes the document production of Defendant Moskowitz, counsel for Defendant Wein and her corporate entities, alleging that the 105 items remaining on Moskowitz's privilege log are not subject to the attorney-client privilege. Conopco seeks access to these documents, or, in the alternative, an in camera inspection by the Court.

By way of background, Moskowitz's privilege log originally

8

contained nearly 1,000 documents, consisting of three categories of attorney-client communications: 1) documents discussing core legal issues about Dina Wein and her companies' business dealings, 2) disputes with customers, as well as alleged threats and extortion attempts by a former Wein employee — Irith Hayblum, and 3) pre-dispute correspondence concerning particular business transactions, including attorney review of contracts and sales and marketing materials.   Conopco has long disputed Moskowitz's claim of privilege with respect to most of the documents, and at the April 18 hearing, in an effort to expedite the process, Defendants agreed to produce the documents in category three, without waiving their privilege with regard to the first two categories.   Having now produced the more than 800 documents in category three, the 105 documents remaining on the privilege log, and under consideration here, consist entirely of those from the first two categories.

Conopco puts forth two principal arguments in challenging the documents remaining on Moskowitz's privilege log.   First, Conopco argues that the recently-produced documents from category three show that "the assertion of the attorney-client privilege is improper as Defendant Moskowitz's input has nothing to do with seeking or giving legal advice, and everything to do with being a de facto and covert 'senior editor' of every written document leaving the Enterprise's business." (Pl. 5/22 Letter, at 6.) Second, Conopco argues that, "even assuming _arguendo_ that the

attorney-client privilege attaches to the remaining documents listed in the [privilege log], . . . based on the crime-fraud exception, the invocation of any such privilege is eviscerated." (Id.)

Moskowitz responds that neither the production of the remaining documents, nor an in camera inspection, is warranted. Moskowitz argues that the category three documents provide no support for the production of the documents in categories one and two, and, with respect to the crime-fraud exception, Conopco "has failed to meet the heavy burden needed to invoke that exception." (Letter from Ronald C. Minkoff, Esq. to the Court, dated May 31, 2007 ("Def. 5/31 Letter"), at 5.)[2]

The attorney-client privilege affords confidentiality to communications among clients and their attorneys, for the purpose of seeking and rendering an opinion on law, or assistance in some legal proceeding, so long as the communications were intended to be, and were in fact, kept confidential. See United States v. Int'l Bhd. of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997); United States v. Doe ( In re Six Grand Jury Witnesses), 979 F.2d 939, 943 (2d Cir. 1992); John Doe Corp. v. United States (In re John Doe Corp.), 675 F.2d 482, 487-88 (2d Cir. 1982); Urban Box Office Network, Inc. v. Interfase Managers, L.P., No. 01 Civ. 8854 (LTS)(THK), 2006 WL

---

[2] Moskowitz raises a third argument, regarding waiver, that the Court does not consider.

1004472, at *5 (S.D.N.Y. Apr. 17, 2006).  The privilege is among the oldest of the common law privileges and "exists for the purpose of encouraging full and truthful communication between an attorney and his client." In re von Bulow, 828 F.2d 94, 100 (2d Cir. 1987); accord United States v. Bilzerian, 926 F.2d 1285, 1292 (2d Cir. 1991).  "However, because the privilege stands as an obstacle of sorts to the search for truth, it must be applied only to the extent necessary to achieve its underlying goals." Urban Box Office, 2006 WL 1004472, at *2 (internal citations and quotations omitted); see also In re Steinhardt Partners, 9 F.3d 230, 235 (2d Cir. 1993).  "The burden of establishing the existence of an attorney-client privilege, in all of its elements, rests with the party asserting it." In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000) (quoting Int'l Bhd. of Teamsters, 119 F.3d at 214).

It is well-established that the attorney-client privilege applies only where legal advice, not business advice, is sought and given. See In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1037 (2d Cir. 1984); Colton v. United States, 306 F.2d 633, 638 (2d Cir. 1962) (investment advice given by an attorney is not privileged); Softview Computer Prods. Corp. v. Haworth, Inc., No. 97 Civ. 8815 (KMW)(HBP), 2000 WL 351411, at *18 (S.D.N.Y. Mar. 31, 2000); Stratagem Dev. Corp. v. Heron Int'l, N.V., 153 F.R.D. 535, 543 (S.D.N.Y. 1994) (where advice is

11

primarily legal, as opposed to business in nature, the privilege attaches).  Where an attorney is involved in the business affairs of a client, there may be an overlap of business and legal advice, for which the test commonly employed is "whether the predominant purpose of the communication is to render or solicit legal advice." In re the County of Erie, 473 F.3d 413, 420 (2d Cir. 2007); see also Urban Box Office, 2006 WL 1004472, at *5 (citations omitted). Where there are several possible interpretations of a document based upon the surrounding circumstances, the party asserting the privilege must produce evidence sufficient to satisfy a court that legal, not business, advice is being sought. See Urban Box Office, 2006 WL 1005572, at *6 (citing Lyondell-Citgo Refining, LP v. Petroleos De Venezuela, S.A., No. 02 Civ. 0795 (CBM), 2004 WL 3019767, at *2 (S.D.N.Y. Dec. 29, 2004)); cf. Renner v. Chase Manhattan Bank, No. 98 Civ. 926 (CSH), 2001 WL 388044, at *1 (S.D.N.Y. Apr. 17, 2001) ("[D]efendants have the burden of showing that communications to and from [their attorney] were made solely for the purpose of the [defendants] seeking legal advice and its counsel rendering it, and not for the purpose of advancing a party's business ventures.").

    As an initial matter, there is evidence that, at least on some occasions, Moskowitz was acting in a business capacity rather than as an attorney.  Conopco asserts that there is testimony from former employees of Defendants that Moskowitz reviewed every

business document, (see Letter from Rodney A. Brown, Esq. to the Court, dated June 7, 2007 ("Pl. 6/7 Letter"), at 3), and specific documents that have been produced appear to reflect business rather than legal advice. (See, e.g., AM Priv 0170, attached as part of Ex. N to Pl. 5/22 Letter (reviewing communication where, on fax cover letter accompanying a letter from one of Defendants' entities to the president of a consumer product company, employee asks Moskowitz how she should select and distribute the sampling quantities of various products, and Moskowitz makes a note saying "Told Jennifer to stay with the 1% figure, at least as it relates to product categories").)  Yet, Defendants argue that in many of the category three documents presented to the Court, Moskowitz's edits to draft correspondence were intended to ensure that the letters being sent to customers were consistent with the program as stated in the marketing materials and other agreements, presumably for the purpose of avoiding future litigation. (See, e.g., AM Priv 0107, 0109, 0892, 0894, attached as part of Ex. N to Pl. 5/22 Letter).  Defendants further argue that where there were misunderstandings between a customer and Defendants regarding the nature of Defendants' programs, (see Def. 5/31 Letter, at 4), the fact that an attorney's review was sought of all communications with the client supports the inference that Moskowitz's role was to provide legal advice.

Defendants' arguments are not entirely convincing.  The fact

13

that some of Moskowitz's edits made to the documents were purportedly intended to clarify the nature of Defendants' programs does not necessarily imply that Moskowitz was providing legal advice, especially where the documents themselves are typical communications between business people that are not contracts or other documents commonly understood as legal in nature. Moreover, where at least some of the documents sent to Moskowitz for review ask specifically for advice with regard to business matters, the fact that apparently all documents sent by Defendants' employees to other companies required Moskowitz's review does little to demonstrate that Moskowitz was predominantly providing legal advice. Were the Court considering the question of whether the category three documents themselves contained legal advice or business advice, it is unlikely that, on the evidence presented here, Defendants would have met their burden in establishing that all of the documents contain legal advice.

However, the Court need not delve further, as that is not the question at issue here. The category three documents were voluntarily produced, and the remaining question involves their probative value with regard to whether the attorney-client privilege has been properly invoked for the documents in categories one and two. The Court acknowledges that, while there may be some uncertainty as to whether the category three documents constitute business or legal advice, the documents in categories one and two

14

are inherently more likely to be legal in nature, since they involve communications with counsel after specific disputes with clients arose.  However, the fact that a client was dissatisfied does not necessarily render an attorney's edits of subsequent correspondence with the client legal advice.  Business people, not just attorneys, frequently make decisions about how to address client complaints.  In looking at the revised privilege log for the category one and two documents, the descriptions provided for many of the entries do not suggest that they address legal matters involving particular disputes.  Instead, a significant number of documents include descriptions that suggest the nature of the work performed by Moskowitz, with regard to those documents, was similar to the work done with regard to the category three documents. (See Moskowitz's Revised Master Privilege Log, Ex. M to Pl. 5/22 Letter (including entries such as "notes re advice on draft of letter," "handwritten notes re advice," "fax cover sheet with AM's notes and advice," "Email with AM's notes to client re advice," "Draft letter for AM's review," etc.).)  Moreover, while some documents on the privilege log explicitly state that they involve "*legal* advice," many others are merely described as "notes re: advice" or "review." (See id.)  As such, and in light of Defendants' over-arching burden in establishing that the documents contain legal advice subject to the attorney-client privilege, the Court finds that an in camera review of the documents in categories one and two is warranted. See

15

Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc., 325 F. Supp. 2d 270, 274 (S.D.N.Y. 2004)(noting courts' broad discretion in choosing whether to conduct an in camera review) (internal citations omitted).

Despite this ruling, the Court will nevertheless briefly consider Conopco's invocation of the crime-fraud exception, based on the evidence currently before the Court. The federal courts have recognized an exception to the attorney-client privilege for those communications between client and counsel "in furtherance of contemplated or ongoing criminal or fraudulent conduct." In re Omnicom Group Inc., Sec. Litig., 233 F.R.D. 400, 404 (S.D.N.Y. 2006) (quoting United States v. Jacobs, 117 F.3d 82, 87 (2d Cir. 1997)). The exception applies specifically to communications "that are designed to facilitate or conceal the commission of a crime or fraud." Liberty Environmental Sys., Inc. v. County of Westchester, 94 Civ. 7431 (WK)(MHD), 1997 WL 471053, *5 (S.D.N.Y. Aug. 18, 1997) (citing John Doe, Inc. v. United States (In re John Doe, Inc.), 13 F.3d 633, 636 (2d Cir. 1994)). "The discovering party bears the burden of proving the applicability of the exception, and to do so he must show that there is probable cause to believe (1) that a crime or fraud has been committed or was intended and (2) that the attorney-client communication was intended to facilitate or conceal the misconduct." Galvin v. Hoblock, No. 00 Civ. 6058 (DAB) (MHD), 2003 WL 22208370, at *5 (S.D.N.Y. Sept. 24, 2003) (citing Liberty,

16

1997 WL 471053, at *5); <u>see also</u> <u>United States v. Jacobs</u>, 117 F.3d at 87.  In further articulating the relevant standard, the Second Circuit has stated:

> A party wishing to invoke the crime-fraud exception must demonstrate that there is a factual basis for a showing of probable cause to believe that a fraud or crime has been committed and that the communications in question were in furtherance of the fraud or crime. This is a two-step process. First, the proposed factual basis must strike "a prudent person" as constituting "a reasonable basis to suspect the perpetration or attempted perpetration of a crime or fraud, and that the communications were in furtherance thereof." <u>In re John Doe</u>, 13 F.3d at 637 (quoting <u>In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983</u>, 731 F.2d 1032, 1039 (2d Cir. 1984)).  Once there is a showing of a factual basis, the decision whether to engage in an <u>in camera</u> review of the evidence lies in the discretion of the district court. <u>United States v. Zolin</u>, 491 U.S. 554, 572, 109 S. Ct. 2619, 2630-31 (1994). Second, if and when there has been an <u>in camera</u> review, the district court exercises its discretion again to determine whether the facts are such that the exception applies.

> <u>Jacobs</u>, 117 F.3d at 87.

Based on the evidence presented, Conopco simply has not met its burden in proving the applicability of the exception.  The parties have starkly different views of this case.  Defendants, including Moskowitz, have consistently argued that this is a simple breach of contract case, in which Conopco accuses Defendants of violating the parties' performance agreement, while Conopco argues adamantly that it was the victim of a RICO fraud, in which Defendants concocted an elaborate scheme to defraud Conopco and other consumer product companies through "a variety of misrepresentations and various ruses," including the use of "bogus

names," "bogus serial job offers," "a bogus National Distribution Program," "bogus (and paid) references," "false statements," and "a false paper trail." (Pl. 6/7 Letter, at 5; see also First Amended Complaint, dated June 2, 2006, ¶¶ 37-38, 45-50, 53.)  Essentially, Conopco contends that Defendants represented that they would distribute Conopco's product through a school sampling program while, in reality, they diverted the product, purchased at a deep discount, to the wholesale market.

While Conopco references its First Amended Complaint, and proposed Second Amended Complaint, in support of its position, the allegations in the Complaint cannot suffice to establish probable cause to believe that a fraud was perpetrated.  Otherwise, through the mere allegation of fraud in a complaint, a party could use the crime-fraud exception to wholly swallow the attorney-client privilege. See Omnicom Group, 233 F.R.D. at 405 (noting that "the effect of granting the motion [for application of the crime-fraud exception] would be to eliminate any protection for a wide array of otherwise privileged documents," as a result of which "courts have placed considerable emphasis on protecting the legitimate use of the attorney-client privilege because of the significant policies that the privilege embodies").  Indeed, as stated in Omnicom Group, "any findings by the court that would suggest a strong enough basis to infer the perpetration of a fraud when such fraud is an essential element of the plaintiff['s] underlying claims in this

case would, at the very least, potentially tilt the playing field of this lawsuit at a relatively early stage in the litigation." <u>Id.</u> at 405-06.

Beyond the allegations in the Complaint, Conopco cites to one deposition in which a former employee testified that Defendants used bogus names to identify themselves over the telephone, and three other depositions in which corporate representatives of other consumer product companies stated that they would not have entered into agreements with Defendants if they had been under the impression that their products would be sold to wholesalers (and not as part of a sampling program). (<u>See</u> Letter from Rodney A. Brown, Esq. to the Court, dated June 7, 2007 ("Pl. 6/7 Letter"), at 6.) The former deposition testimony is inadequate to meet Conopco's burden in establishing the applicability of the exception, and the latter testimony is simply irrelevant absent a connection to other competent evidence. In contrast, the agreement between the parties makes specific reference to both a promotional and wholesaler program. (<u>See, e.g.</u>, Performance Agreement, Ex. F to Def. 5/31 Letter.) Other than counsel's assertions, the Court has not been presented with competent evidence indicating that Conopco was unaware that its products would be sold to wholesalers, that Defendants intentionally misrepresented that fact, or that the misrepresentation caused Conopco to enter into a relationship with Defendants, to its detriment. Nor has it demonstrated that

Moskowitz, as outside counsel, was a knowing participant in a fraudulent scheme, and that his communications with Defendants furthered the scheme.

The Court's view is solely with respect to the instant request, and reflects no position with regard to the merit, or likelihood of success, of Conopco's underlying claims. While evidence presented during the course of this litigation does provide some reason for pause, at this stage, on the basis of evidence presented in support of its request, Conopco has not met its burden under the crime-fraud exception of convincing this Court that there is a reasonable probability that Defendants engaged in fraudulent conduct, and that they used their communications with Moskowitz to carry out the intended fraud. See <u>Omnicom Group</u>, 233 F.R.D. 410. However, if the Court's <u>in camera</u> review of the privileged documents provides a basis, the Court will, at that time, reconsider its ruling with respect to the applicability of the crime-fraud exception.

**CONCLUSION**

For the reasons set forth above, Conopco's requests regarding Acevedo's documents is denied in its entirety. With regard to Moskowitz's privilege log, all documents included in the log should be submitted to the Court within one week for an <u>in camera</u> review.

So Ordered.

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: June 27, 2007
       New York, New York

21