UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------X
CONOPCO, INC.,

                      Plaintiff,

      -against-                    05 Civ. 09899 (RJH)(THK)

DINA WEIN, et al.,            **MEMORANDUM OPINION AND**
                                               **ORDER**

                      Defendants.
------------------------------------------X

**THEODORE H. KATZ, UNITED STATES MAGISTRATE JUDGE.**

Plaintiff Conopco Inc. d/b/a Unilever ("Conopco") filed this action in November 2005, alleging that Defendant Dina Wein ("Wein"), various corporate entities she organized, and employees of those entities, including her counsel, perpetrated an extensive fraudulent scheme against Plaintiff and numerous other consumer product companies. This action was referred to this Court for general pretrial supervision, pursuant to 28 U.S.C. § 636(b)(1)(A). Presently before the Court is a motion by Defendants Wein, Avraham Moskowitz, Axis Holdings, Inc., Great Grades Marketing, Inc., and Advanced Concepts Marketing, Inc. (collectively "Defendants"), to quash a subpoena issued by Plaintiff Conopco to North Fork Bank ("NFB"). For the reasons that follow, the motion is denied.

## BACKGROUND

Plaintiff's First Amended Complaint alleges fraud and federal RICO claims, in addition to claims of breach of contract, breach of an implied duty of good faith and fair dealing, and unjust

enrichment. (See First Amended Complaint, dated June 2, 2006 ("First Am. Compl.").) Defendant Wein is alleged to be the President and owner of the various corporate Defendants, all allegedly formed for purposes of advancing the fraudulent scheme outlined in the First Amended Complaint. (See id. ¶¶ 1, 5, 8-10.)

Plaintiff contends that Defendants, through a variety of misrepresentations and sophisticated ruses, obtained Plaintiff's and other companies' products at substantially discounted prices, purportedly to utilize in promotional and sampling programs intended to expand the companies' markets. Instead, according to Plaintiff, Defendants diverted the products back into the wholesale market, causing economic harm to Plaintiff and the other victim companies, while unjustly enriching Defendants. (See id. ¶¶ 2, 3.)

Wein lies at the heart of the RICO enterprise alleged by Plaintiff. She is alleged to have established numerous corporate entities in order to perpetrate the fraudulent scheme against Plaintiff and other corporate victims.[1] Plaintiff's subpoena to NFB seeks all bank records relating to 217 entities and individuals alleged to be associated with Wein and/or engaged in the RICO conspiracy. Defendants seek to quash the subpoena arguing that (1) it is overbroad, and (2) it seeks confidential personal financial

---

[1] In a separate motion, not addressed here, Plaintiff seeks to amend the First Amended Complaint to identify, inter alia, a more comprehensive list of Wein-related entities related to the alleged RICO enterprise.

2

information of Wein, her husband, and various corporations and trusts, that is irrelevant to the claims in the action. (See Defendants' Joint Memorandum of Law in Support of Motion to Quash Plaintiff's Subpoena Directed to North For Bank, dated June 21, 2007 ("Defs.' Mem.").)  Defendants cite an earlier Order of the Court, regarding a subpoena seeking documents from Wein's accountant, Gerry Acevedo, which permitted them to exclude from production to Plaintiff "strictly personal financial information" of Wein's, arguing that the same parameter should apply to the subpoena to NFB.

As an initial matter, the Court notes that Plaintiff's counsel has been in contact with NFB, which has not registered any objection to the subpoena, and is in the process of gathering responsive documents.  Moreover, NFB has indicated that it has records relating to only 50 of the 217 entities and individuals listed in the subpoena.  According to Plaintiff, each of those entities has some relationship to Wein and/or the RICO scheme alleged in the First Amended Complaint. (See Plaintiff's Memorandum of Law in Opposition to Defendants' Joint Motion to Quash Subpoena Direct to Non-Party North Fork Bank, dated June 27, 2007 ("Pl.'s Mem."), at 1-3, 5-6.)  Thus, the scope of the subpoena is effectively far narrower than originally conceived.

There is no dispute that Wein has a privacy interest in her personal financial affairs; yet, even the confidentiality of

3

personal financial matters must yield to the Federal Rules of Civil Procedure, which govern the discovery of information relevant to the claims and defenses in a federal court action. "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Thus, to the extent that the financial information Plaintiff seeks is relevant, it must be produced. Its confidentiality can be protected by a variety of means, most notably the Confidentiality Order entered in this action. See Brassco, Inc. V. Klip, No. 99 Civ. 3014 (RMB)(DF), 2004 WL 1385816, at *2 (S.D.N.Y. June 21, 2004) (concluding that bank records that may show financial gain from allegedly improper transactions are not privileged, and any privacy interest can be addressed by a protective order).

In any event, Plaintiff has made a sufficient preliminary showing that certain aspects of Wein's purportedly personal financial affairs are not strictly "personal," and cannot be distinguished from the financial affairs of the alleged RICO conspiracy.

At his deposition, Gerry Acevedo, Wein's personal and business accountant, testified that Wein's personal accounts were the source of the initial funds used to purchase products from manufacturers

4

who Plaintiff contends were defrauded. Wein would transfer money to one of the corporate accounts and the money would be paid out to the manufacturers. When the goods were sold, the money from the sale would go into a different corporate account than the account out of which the purchase money came, and would then be transferred back to Wein's personal account. (See Pl.'s Mem. at 8; Transcript of Deposition of Gerry Acevedo, dated Feb. 1, 2007, attached as Exhibit ("Ex.") H to Affidavit of Rodney A. Brown, dated June 27, 2007 ("Brown Aff."), at 149-51.) In addition, there is documentary evidence of transfers between Wein's personal account and the corporate accounts, and between Wein's so-called "Family" and "Investment" trust accounts and the accounts of Wein-controlled companies. (See Exs. I & J to Brown Aff.)

The information sought in the subpoenaed bank accounts is therefore not strictly personal. Rather, it is likely to contain evidence of transfers of personal funds from Wein into the alleged RICO enterprise, and receipt of money by Wein from the alleged RICO enterprise.

Defendants argue, nevertheless, that even if information exists relating to the commingling and transfer of funds between Wein's personal accounts and the accounts of entities owned and operated by Wein, it would have no relevance to the claims in this action because there is no reference or allegation in the First Amended Complaint to the financial affairs of Wein and her

5

companies, and the fraud alleged is unrelated to Wein's financial affairs. (See Defendants' Joint Memorandum of Law in Reply to Plaintiffs' Opposition to Defendants' Motion to Quash, dated June 28, 2007 ("Defs.' Reply"), at 5-7.) This argument is based on an unduly narrow conception of relevance.

Section 1962 of RICO prohibits (a) the use of income "derived ... from a pattern of racketeering activity to acquire an interest in, establish, or operate an enterprise engaged in or affecting interstate commerce; (b) the acquisition of any interest in or control of such an enterprise through a pattern of racketeering activity; (c) the conduct or participation in the conduct of such an enterprise's affairs through a pattern of racketeering activity; and (d) conspiring to do any of the above." GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463, 465 (2d Cir. 1995), cert. denied, 518 U.S. 1017, 116 S. Ct. 2547 (1996). Moreover, in order to establish a RICO claim against a defendant, the defendant must be involved in conducting or participating in the conduct of the RICO enterprise's affairs; that is, she must have some part in directing the enterprise's affairs. See Reves v. Ernst & Young, 507 U.S. 170, 179, 113 S. Ct 1163, 1170 (1973); Azrielli v. Cohen Law Offices, 21 F.3d 512, 521 (2d Cir. 1994).

Based upon Plaintiff's proffer and the evidence offered in support of the subpoena, there is reason to believe that the financial accounts of Wein and the corporate entities she

established may provide evidence of (1) Wein's participation in the conduct of a RICO enterprise through a pattern of racketeering activity, (2) the use of income that is derived from racketeering activity to operate the RICO enterprise, and (3) evidence of a conspiracy in which income derived from a pattern of racketeering activity is used to operate the RICO enterprise.  In short, the money Wein either invests in or receives from the alleged RICO conspiracy may be evidence of how the enterprise operates, and of the role Wein plays in the enterprise.  The subpoena is therefore "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).[2]

Accordingly, Defendants' motion to quash Plaintiff's subpoena to North Fork Bank is denied.  The financial information retrieved shall, however, be subject to the Confidentiality Order entered in this action.

So Ordered.

_____
THEODORE H. KATZ
UNITED STATES MAGISTRATE JUDGE

Dated: July 23, 2007
       New York, New York

---

[2] This decision in no way is intended to suggest that Wein is actually engaged in a RICO enterprise.  If the RICO claim survives the pending motion to dismiss, that issue will be decided by a fact-finder.